IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| Larry Clayton McGarity, | ) | C/A No.: 1:14-1306-RMG-SVH |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | REPORT AND RECOMMENDATION |
| Carolyn W. Colvin, Acting | ) | |
| Commissioner of Social Security | ) | |
| Administration, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

This appeal from a denial of social security benefits is before the court for a
Report and Recommendation ("Report") pursuant to Local Civ. Rule 73.02(B)(2)(a)
(D.S.C.). Plaintiff brought this action pursuant to 42 U.S.C. § 405(g) and § 1383(c)(3) to
obtain judicial review of the final decision of the Commissioner of Social Security
("Commissioner") denying his claim for Supplemental Security Income ("SSI"). The two
issues before the court are whether the Commissioner's findings of fact are supported by
substantial evidence and whether she applied the proper legal standards. For the reasons
that follow, the undersigned recommends that the Commissioner's decision be affirmed.

I.    Relevant Background

      A.    Procedural History

On February 28, 2011, Plaintiff protectively filed an application for SSI in which
he alleged his disability began on March 3, 2010. Tr. at 92–99. His application was
denied initially and upon reconsideration. Tr. at 57–60, 66–67. On August 1, 2012,
Plaintiff had a hearing before Administrative Law Judge ("ALJ") John S. Lamb. Tr. at

31–52 (Hr'g Tr.). The ALJ issued an unfavorable decision on October 17, 2012, finding that Plaintiff was not disabled within the meaning of the Act. Tr. at 8–30. Subsequently, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner for purposes of judicial review. Tr. at 1–4. Thereafter, Plaintiff brought this action seeking judicial review of the Commissioner's decision in a complaint filed on April 10, 2014. [ECF No. 1].

B.    Plaintiff's Background and Medical History

1.    Background

Plaintiff was 38 years old at the time of the hearing. Tr. at 37. He completed the ninth grade and was enrolled in special education. Tr. at 37–38. His past relevant work ("PRW") was as a framer, a welder, a millwright, a carpet cleaner's helper, a grocery stock clerk, and a kitchen helper. Tr. at 49. During the hearing, Plaintiff's attorney requested his prior application for SSI be reopened. Tr. at 40. Plaintiff alleges he has been unable to work since November 18, 2009. Tr. at 11, 40.

2.    Medical History

On February 2, 2009, Plaintiff presented to Greer Memorial Hospital ("GRMH") after being injured in a car accident one day earlier. Tr. at 165. He complained of pain in his neck and back and stated his pain radiated from his right hip to his right calf. *Id.* He indicated he hit his head on the car window, but denied loss of consciousness. *Id.* A drug test was positive for benzodiazepines, cannabinoids, and cocaine metabolite. Tr. at 172. CT scans of Plaintiff's head and cervical spine showed no acute injuries. *Id.* X-rays indicated no acute findings, but showed lumbar scoliosis and slight retrolisthesis of L5 on

2

S1 unchanged from 2004. Tr. at 175–76. Plaintiff was diagnosed with multiple contusions, cocaine abuse, and tobacco abuse. Tr. at 170.

Plaintiff presented to GRMH on May 3, 2009, after having sustained an injury to his left leg while playing softball. Tr. at 183. Plaintiff indicated he was self-employed. Tr. at 179. He was diagnosed with a groin strain. Tr. at 181.

Plaintiff presented to Kevin S. Smith, M.D. ("Dr. Smith"), at Taylors Family Practice and complained of pain in his left shoulder and back. Tr. at 282. He was instructed to follow up with a pain clinic and a psychiatrist. Tr. at 282–83. Plaintiff again followed up with Dr. Smith on April 30, 2010. Tr. at 284. He complained of low back pain and anxiety. *Id.* Dr. Smith observed Plaintiff's mood as level and his affect to be "apropos." *Id.* He instructed Plaintiff to stop smoking, to see a pain clinic and a psychiatrist, and to consider an MRI. Tr. at 284–85. He prescribed Lortab and Xanax. Tr. at 285. Plaintiff presented to Dr. Smith on July 1, 2010, with neck and low back pain. Tr. at 286. Dr. Smith again described Plaintiff's mood to be level and his affect as "apropos." *Id.* He refilled Lortab and Xanax and instructed Plaintiff to stop smoking, to visit a pain clinic and a psychiatrist, and to consider an MRI. Tr. at 287. Plaintiff presented with the same complaints and Dr. Smith provided the same instructions on August 25, 2010. Tr. at 288–89.

Plaintiff began treatment with chiropractor Henry E. Bruce ("Dr. Bruce") in December 2010 following a car accident. Tr. at 194. Plaintiff indicated on a patient information sheet that he was self-employed and performing "HVAC" work. Tr. at 205. Dr. Bruce provided an undated narrative report in which he described Plaintiff's

3

complaints and his observations. Tr. at 191–92. Plaintiff presented to Dr. Bruce with severe pain and discomfort in his neck, low back and legs, accompanied by restricted motion in his cervical and lumbar spine, stiffness, palpatory tenderness in his cervical and lumbar spine, and hypertonicity. Tr. at 191. Dr. Bruce diagnosed lumbar disc displacement, cervical disc displacement, sciatica, and myalgia/myofascitis. *Id.* He indicated "Mr. McGarity's ability to perform daily activity is impaired in that his performance level of work and lesiure [sic] activity which he previously enjoyed has been diminished by 25–35%." Tr. at 192. He stated that Plaintiff tired more easily and would be unable to achieve his former level of performance. *Id.*

On January 21, 2011, Plaintiff presented to GRMH with fever and cough. Tr. at 211. He was diagnosed with empyema, hypoxia, and pneumonia and transferred to Greenville Memorial Hospital ("GMH") for treatment. Tr. at 213–14. He reported right-sided chest pain and indicated he smoked a half to one pack of cigarettes daily and a "quarter bag" of marijuana weekly. Tr. at 268. Plaintiff was treated with intravenous antibiotics and underwent right video-assisted thoracoscopic ("VATS") decortication. Tr. at 269, 270. He was discharged on January 27, 2011, and instructed to follow up with Dr. Stephenson in one week. Tr. at 272.

Plaintiff followed up with Dr. Stephenson on February 7, 2011, and reported constant pain at his incision site. Tr. at 276. He again followed up with Dr. Stephenson on March 1, 2011, and reported pain in his back and legs. Tr. at 279. Dr. Stephenson observed Plaintiff to have clear lungs, a healed incision, and a normal chest x-ray. *Id.* Plaintiff requested Dr. Stephenson prescribe narcotics for his chronic back pain, and Dr.

4

Stephenson referred him to pain therapy. *Id.* On February 7, 2011, Dr. Stephenson noted Plaintiff continued to request pain medication and indicated he was talking Methadone from a non-physician. Tr. at 280. Dr. Stephenson prescribed Roxicodone 15 milligrams, but noted that it would "be the last narcotic prescription provided by our practice." *Id.*

Plaintiff return to Dr. Smith for treatment on March 10, 2011. Tr. at 290. Dr. Smith again observed Plaintiff's mood to be level and his affect to be "apropos." Tr. at 290. Plaintiff reported worsened back pain in his thoracic spine. *Id.* Dr. Smith instructed Plaintiff to discontinue smoking, to have his blood pressure monitored, to consider an MRI of his thoracic spine and a DEXA scan for osteoporosis, and to see a pain clinic and psychiatrist. Tr. at 291. He prescribed Oxycodone and Xanax. *Id.*

Between January and March 2011, Plaintiff received chiropractic treatment from Dr. Bruce for pain in his back, neck, and legs. Tr. at 379–409. Dr. Bruce's observations and findings were the same as those in 2010. Tr. at 379–80.

On April 25, 2011, the disability examiner spoke with Dr. Smith about completing a mental status evaluation. Tr. at 316. Dr. Smith indicated he generally did not complete such forms because psychiatry was not his specialty. *Id.* In response to the disability examiner's question regarding whether Plaintiff had been referred to a specialist, Dr. Smith indicated Plaintiff was "a pretty healthy guy, a little thin but other than that he is healthy and has not required invasive care." *Id.*

On May 31, 2011, state agency consultant Gary E. Calhoun, Ph. D., completed a psychiatric review technique in which he indicated Plaintiff had anxiety disorder and a history of cannabis abuse. Tr. at 292–305. He assessed Plaintiff to have no restriction of

activities of daily living, mild difficulties in maintaining social functioning, and mild difficulties in maintaining concentration, persistence, or pace. Tr. at 302.

State agency physician Ted Roper, M.D, assessed Plaintiff's physical residual functional capacity on June 22, 2011, and found that Plaintiff could occasionally lift and/or carry 50 pounds, frequently lift and/or carry 25 pounds, stand and/or walk for about six hours in an eight-hour workday, sit for a total of about six hours in an eight-hour workday, occasionally climb ladders/ropes/scaffolds and should avoid concentrated exposure to humidity, fumes, odors, dusts, gases, poor ventilation, and hazards. Tr. at 306–13.

On July 25, 2011, Plaintiff presented to Thaer Joudeh, M.D. ("Dr. Joudeh"), at Southside Medical Center ("SMC"), with low back pain. Tr. at 426. He indicated the pain was intermittent, sharp, shooting, and radiated down both legs. *Id.* He stated it was aggravated by movement and relieved by rest. *Id.* Dr. Joudeh described Plaintiff as "chronically ill appearing." *Id.* He observed lumbar paraspinal tenderness and bilateral sacroiliac joint tenderness. *Id.* He assessed lumbago and prescribed Lortab 10-500 milligrams. *Id.*

Plaintiff followed up with Dr. Joudeh on April 10, 2012, for anxiety, chronic pain, and lumbago. Tr. at 422. Plaintiff's psychological examination was normal. *Id.* Dr. Joudeh observed Plaintiff to have a positive straight-leg raise at 15 degrees on the right and 30 degrees on the left and decreased right patellar reflexes. *Id.* He assessed lumbago, unspecified anxiety state, and depressive disorder. *Id.* He refilled Plaintiff's medications and prescribed Neurontin 300 milligrams, three times daily. Tr. at 423.

Plaintiff again presented to Dr. Bruce on April 16, 2012, following another car accident. Tr. at 324. Plaintiff followed up with Dr. Bruce several times each week in April, May, and June 2012. Tr. at 326–73. Dr. Bruce's findings were the same as those indicated in the report from Plaintiff's 2010 examination and treatment. Tr. at 324–25.

Plaintiff complained to Dr. Joudeh of worsened anxiety and depression and increased neck and back pain on May 8, 2012. Tr. at 418. He reported he was taking more medication than he was prescribed. *Id.* Dr. Joudeh assessed lumbago, unspecified anxiety state, benign essential hypertension, and cervicalgia. *Id.* He refilled Plaintiff's medications, prescribed Flexeril, and instructed Plaintiff to follow up in four weeks. *Id.*

Plaintiff presented to Dr. Joudeh on June 4, 2012, and reported increased neck and back pain following a car accident. Tr. at 414. Plaintiff stated he had been overtaking his medications following the accident. *Id.* Dr. Joudeh observed vertebral spine tenderness, paraspinal tenderness, sacroiliac ("SI") joint tenderness, costovertebral angle ("CVA") tenderness, paraspinal spasm, tender subcutaneous nodules, negative straight-leg raise, normal sensory and reflex exams, and normal gait. *Id.* He assessed lumbago, unspecified anxiety state, benign essential hypertension, and cervicalgia and refilled Plaintiff's medications. *Id.*

On July 3, 2012, Frederick Veit, M.D. ("Dr. Veit") examined Plaintiff at SMC. Tr. at 410. Dr. Veit observed Plaintiff to be pleasant and in no acute distress. *Id.* He noted bilateral sacroiliac joint tenderness, lumbar paraspinal tenderness, and paralumbar tenderness. *Id.* He indicated Plaintiff had a positive straight-leg raise on the left at 30

degrees. *Id.* He noted Plaintiff was "unable to work for the past four years." *Id.* He assessed lumbago and anxiety state and refilled Plaintiff's prescriptions. Tr. at 410–11.

Plaintiff presented to Randel R. Jones, Ph. D. ("Dr. Jones"), for a psychological consultative examination on August 27, 2012. Tr. at 428–31. Dr. Jones observed Plaintiff to be alert, responsive, and able to maintain attention and concentration; to be oriented to person, place, and date, but not current events; to have intact recent and remote memory; to have calm and dysphoric mood and slightly blunted affect; and to have logical and coherent thought processes. Tr. at 429. Dr. Jones indicated Plaintiff was compliant with the examination, but seemed to lack motivation to perform at his optimal level, which he indicated may have the effect of suppressing Plaintiff's test scores. *Id.* On the Wechsler Adult Intelligence Scale, Fourth Edition ("WAIS-IV"), Plaintiff's full scale IQ score was 55, placing him in the impaired range. *Id.* His other scores were: 61 for verbal comprehension, 65 for perceptual reasoning, 60 for working memory, and 56 for processing speed. Tr. at 429. Dr. Jones indicated "[t]hese scores were significantly below that which would be expected given the applicant's work history." *Id.* Dr. Jones administered the Wide Range Achievement Test, Fourth Edition ("WRAT-4") and assessed Plaintiff's word reading, spelling, and math scores to be at the first grade level. Tr. at 430. Although Dr. Jones attempted to administer the Personality Assessment Inventory, he was unable to complete the assessment because Plaintiff complained he was unable to understand the instructions. *Id.* Dr. Jones' impressions were suspect borderline intellectual ability based on history and suspect major depressive disorder, single episode. *Id.* Dr. Jones indicated Plaintiff would have difficulty using reading and

writing for receiving and conveying information. Tr. at 431. Dr. Jones assessed no restriction in Plaintiff's abilities to understand and remember simple instructions, to carry out simple instructions, and to make judgments on simple work-related decisions. Tr. at 432. He found Plaintiff to have moderate restrictions in his abilities to understand and remember complex instructions and to carry out complex instructions. *Id.* Dr. Jones indicated Plaintiff may be slow in completing assignments. Tr. at 433.

On August 30, 2012, Plaintiff attended a consultative examination with Alan Peabody, M.D. ("Dr. Peabody"). Tr. at 435–38. Plaintiff complained of occasional headaches, dyspnea on exertion, orthopnea, occasional acid reflux, urinary hesitancy and urgency, arthritis, and poor memory. Tr. at 436. Dr. Peabody observed Plaintiff to have a well-healed scar on his left knee, to walk "somewhat stooped" with a small pace and wide-based gait, and to have full range of motion with good muscle strength in the upper extremities. Tr. at 437. Plaintiff had decreased flexion, extension, and lateral flexion in his lumbar spine, decreased flexion in his bilateral knees, positive straight-leg raise, and decreased grip strength. Tr. at 439–40. Dr. Peabody's diagnostic impressions included personality disorder, degenerative disease of the spine by history, drug addiction, multiple head injuries with resultant brain damage, empyema of the right lung (cured), possible chronic obstructive pulmonary disease, and depression with somatic overlay. Tr. at 437. Dr. Peabody noted the following

> This fellow tends to walk like an old man and makes the most of whatever symptoms he has. It would be useful to get some psychological testing to determine his intelligence level and also to diagnose his considerable personality disorder. It would be useful to get an MRI to see if he actually

> has arthritis in his back. However, it appears that he would benefit
> markedly from some physical therapy.

*Id.* He indicated that Plaintiff could occasionally lift and carry up to 20 pounds; could

never lift and carry over 21 pounds; could sit for two hours at a time, stand for two hours

at a time, and walk for two hours at a time; could sit for two hours out of an eight-hour

workday, stand for two hours out of an eight-hour workday, and walk for two hours out

of an eight-hour workday; could occasionally reach, handle, finger, feel, and push/pull

with his bilateral hands; could occasionally operate foot controls with his bilateral feet;

could occasionally climb stairs, ramps, ladders, and scaffolds and balance; could never

stoop, kneel, crouch, or crawl; could occasionally be exposed to unprotected heights,

moving mechanical parts, operating a motor vehicle, humidity and wetness, dust, odors,

fumes, pulmonary irritants, extreme cold, extreme heat, and vibration; and could be

exposed to only moderate noise. Tr. at 441–46.

    C.      The Administrative Proceedings

        1.      The Administrative Hearing

            a.      Plaintiff's Testimony

At the hearing on August 1, 2012, Plaintiff testified he dropped out of school in

the ninth grade. Tr. at 38. He indicated he failed the sixth grade several times. *Id.* He

stated he could read and write some words, but could not read others. Tr. at 41. He

indicated he was a "slow person." Tr. at 46.

He indicated that he had lung surgery after he developed pneumonia. Tr. at 39. He

stated he was hospitalized for over a week. *Id.* He indicated he continued to experience

shortness of breath. Tr. at 42. He stated he was diagnosed with COPD and emphysema. *Id.* He indicated he no longer smoked cigarettes. Tr. at 44.

Plaintiff testified that he injured his head in a car accident in February 2009. Tr. at 43. He indicated he also injured his right hip, right knee, and low back. *Id.* Plaintiff testified his low back pain caused him the most problems. Tr. at 42. He described constant pain from his lower back to his ankles and from his shoulder blades to his head. Tr. at 44. He indicated he required a cane to walk because of lower back and hip pain. *Id.* He indicated that he would be in greater pain or would fall if he did not use the cane. *Id.* He stated he continued to have headaches as a result of the head injury. Tr. at 44. Plaintiff stated that he was involved in another car accident on April 7, 2012, and injured his head and knee again in that accident. Tr. at 47.

Plaintiff testified anxiety affected his ability to work and that he would break down and cry over nothing. Tr. at 45, 46.

Plaintiff testified he did not vacuum, but did take out the trash. Tr. at 42. He indicated he had not recently been fishing with his father because his shortness of breath increased when he attempted to reel in fish. Tr. at 45. Plaintiff indicated he continued to play church softball. Tr. at 42.

b.    Vocational Expert Testimony

Vocational Expert ("VE") Leanna Hollenbeck reviewed the record and testified at the hearing. Tr. at 47–52. The VE categorized Plaintiff's PRW as a framer/construction worker I as semiskilled and heavy (medium as performed); a welder as medium and skilled; a millwright as heavy and skilled; a carpet cleaner/rug cleaner helper as medium

(light as performed) and unskilled; a grocery stock person/stock clerk, as heavy (light as performed) and semiskilled; and a dishwasher/kitchen helper, as medium (light as performed) and unskilled. Tr. at 49. The ALJ described a hypothetical individual of Plaintiff's vocational profile who could perform light work; should avoid use of ladders, ropes, and scaffolds; could occasionally bend, stoop, crouch, and balance; should avoid concentrated exposure to dust, fumes, odors, gases, and pulmonary irritants; was limited to simple, routine, repetitive tasks with no ongoing public contact; and was limited to a low stress environment, defined as only occasional changes in work setting or decision making. Tr. at 50. The VE testified that the hypothetical individual would be unable to perform Plaintiff's PRW because it required exposure to pulmonary irritants and more than occasional bending, stooping, and crouching. *Id.* The ALJ asked whether there were any other jobs in the region or national economy that the hypothetical person could perform. *Id.* The VE identified light and unskilled jobs as a bench assembler, *Dictionary of Occupational Titles* ("*DOT*") number 706.684-042, with 1,500 positions in the state and 150,000 positions nationally; a small product assembler, *DOT* number 706.684-022, with 2,500 positions in the state and 250,000 positions nationally; and an inspector/hand packager, *DOT* number 559.687-074, with 2,200 positions in the state and 175,000 positions nationally. *Id.* The ALJ asked the VE to also assume the individual was functionally illiterate. *Id.* The VE stated that would not present a problem in the jobs cited. *Id.* The ALJ then asked the VE to assume the individual was limited to sedentary work and was functionally illiterate. Tr. at 51. The VE identified unskilled, sedentary jobs as a table worker, *DOT* number 739.687-182, with 700 positions in the state and

35,000 positions nationally; a circuit board taper, *DOT* number 017.684-010, with 300 positions in the state and 9,500 positions nationally; and an ink printer, *DOT* number 652.685-038, with 340 positions in the state and 30,000 positions nationally. *Id.* The ALJ asked the VE to assume the individual would miss three or more days of work per month and questioned whether there would be jobs available. *Id.* The VE testified that the individual could not maintain employment if absent with such frequency. *Id.*

Plaintiff's attorney asked the VE to assume an individual of Plaintiff's vocational profile and to further assume that the individual had a combination of musculoskeletal problems resulting in chronic pain, depression, and anxiety and could not sustain attention, concentration, or work productively and at an acceptable pace for one hour out of an eight-hour workday. *Id.* Plaintiff's attorney asked if such an individual would be able to perform substantial gainful activity on a regular and sustained basis in the competitive job market. Tr. at 51–52. The VE testified that the individual would not. Tr. at 52.

### 2.    The ALJ's Findings

In his decision dated October 17, 2012, the ALJ made the following findings of fact and conclusions of law:

1.    The claimant has not engaged in substantial gainful activity since November 18, 2009, the prior application's protective filing date (20 CFR 416.971 *et seq.*).

2.    The claimant has the following severe combination of impairments: degenerative disease of spine by history; history of emphysema of right lung and possible COPD; borderline intellectual ability; major depressive disorder; and anxiety (20 C.F.R. 416.920(c)).

3.    The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments

in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).

4. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work (lift, carry, push, or pull 20 pounds occasionally and 10 pounds frequently; stand or walk 6 hours in an 8-hour workday; and sit 6 hours in an 8-hour workday), as defined in 20 CFR 416.967(b) except with the following limitations: is functionally illiterate; have no use of ladder/rope/scaffolds; occasionally bend, stoop, crawl, crouch, balance; avoid concentrated exposure to dust, fumes, odors, gases or pulmonary irritants; and is limited to simple routine and repetitive tasks with no ongoing public contact and low stress defined as only occasional change in work setting or decision making. In the alternative, I find that the claimant has the residual functional capacity to perform sedentary work (lift, carry, push, or pull 10 pounds occasionally and less than 10 pounds frequently; stand or walk 2 hours in an 8-hour workday; and sit 6 hours in an 8-hour workday), as defined in 20 CFR 416.967(a) with the same limitations as above.

5. The claimant is unable to perform any past relevant work (20 CFR 416.965).

6. The claimant was born on January 14, 1974 and was 35 years old, which is defined as a younger individual age 18–49, on November 18, 2009, the prior application's protective filing date (20 CFR 416.963).

7. The claimant is functionally illiterate and is able to communicate in English (20 CFR 416.964).

8. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

9. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.969 and 416.969(a)).

10. The claimant has not been under a disability, as defined in the Social Security Act, since November 18, 2009, the prior application's protective filing date (20 CFR 416.920(g)).

Tr. at 13–26.

D.      Appeals Council Review

In a notice dated February 18, 2014, the Appeals Council indicated it considered the mental capacity form from Dr. Hayes dated May 15, 2013, but found that it did not provide a basis for changing the ALJ's decision. Tr. at 1–2, 4.

II.     Discussion

Plaintiff alleges the Commissioner erred for the following reasons:

1)      the ALJ did not adequately consider the medical opinions in the record;

2)      the ALJ's hypothetical questions to the VE did not account for all of Plaintiff's restrictions;

3)      the Appeals Council failed to appropriately consider new evidence; and

4)      the Commissioner's decision is not supported by substantial evidence.

The Commissioner counters that substantial evidence supports the ALJ's findings and that the ALJ committed no legal error in his decision.

A.      Legal Framework

1.      The Commissioner's Determination-of-Disability Process

The Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are under a "disability." 42 U.S.C. § 423(a). Section 423(d)(1)(A) defines disability as:

the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for at least 12 consecutive months.

42 U.S.C. § 423(d)(1)(A).

To facilitate a uniform and efficient processing of disability claims, regulations promulgated under the Act have reduced the statutory definition of disability to a series of five sequential questions. *See, e.g., Heckler v. Campbell*, 461 U.S. 458, 460 (1983) (discussing considerations and noting "need for efficiency" in considering disability claims). An examiner must consider the following: (1) whether the claimant is engaged in substantial gainful activity; (2) whether he has a severe impairment; (3) whether that impairment meets or equals an impairment included in the Listings;[1] (4) whether such impairment prevents claimant from performing PRW;[2] and (5) whether the impairment prevents him from doing substantial gainful employment. *See* 20 C.F.R. § 416.920. These considerations are sometimes referred to as the "five steps" of the Commissioner's disability analysis. If a decision regarding disability may be made at any step, no further inquiry is necessary. 20 C.F.R. § 416.920(a)(4) (providing that if Commissioner can find

---

[1] The Commissioner's regulations include an extensive list of impairments ("the Listings" or "Listed impairments") the Agency considers disabling without the need to assess whether there are any jobs a claimant could do. The Agency considers the Listed impairments, found at 20 C.F.R. part 404, subpart P, Appendix 1, severe enough to prevent all gainful activity. 20 C.F.R. § 416.925. If the medical evidence shows a claimant meets or equals all criteria of any of the Listed impairments for at least one year, he will be found disabled without further assessment. 20 C.F.R. § 416.920(a)(4)(iii). To meet or equal one of these Listings, the claimant must establish that his impairments match several specific criteria or be "at least equal in severity and duration to [those] criteria." 20 C.F.R. § 416.926; *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990); *see Bowen v. Yuckert*, 482 U.S. 137, 146 (1987) (noting the burden is on claimant to establish his impairment is disabling at Step 3).

[2] In the event the examiner does not find a claimant disabled at the third step and does not have sufficient information about the claimant's past relevant work to make a finding at the fourth step, he may proceed to the fifth step of the sequential evaluation process pursuant to 20 C.F.R. § 416.920(h).

claimant disabled or not disabled at a step, Commissioner makes determination and does not go on to the next step).

A claimant is not disabled within the meaning of the Act if he can return to PRW as it is customarily performed in the economy or as the claimant actually performed the work. *See* 20 C.F.R. Subpart P, § 416.920(a), (b); Social Security Ruling ("SSR") 82-62 (1982). The claimant bears the burden of establishing his inability to work within the meaning of the Act. 42 U.S.C. § 423(d)(5).

Once an individual has made a prima facie showing of disability by establishing the inability to return to PRW, the burden shifts to the Commissioner to come forward with evidence that claimant can perform alternative work and that such work exists in the regional economy. To satisfy that burden, the Commissioner may obtain testimony from a VE demonstrating the existence of jobs available in the national economy that claimant can perform despite the existence of impairments that prevent the return to PRW. *Walls v. Barnhart*, 296 F.3d 287, 290 (4th Cir. 2002). If the Commissioner satisfies that burden, the claimant must then establish that he is unable to perform other work. *Hall v. Harris*, 658 F.2d 260, 264–65 (4th Cir. 1981); *see generally Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987) (regarding burdens of proof).

### 2. The Court's Standard of Review

The Act permits a claimant to obtain judicial review of "any final decision of the Commissioner [] made after a hearing to which he was a party." 42 U.S.C. § 405(g). The scope of that federal court review is narrowly-tailored to determine whether the findings of the Commissioner are supported by substantial evidence and whether the

17

Commissioner applied the proper legal standard in evaluating the claimant's case. *See id.*; *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Walls*, 296 F.3d at 290 (*citing Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990)).

The court's function is not to "try these cases de novo or resolve mere conflicts in the evidence." *Vitek v. Finch*, 438 F.2d 1157, 1157–58 (4th Cir. 1971); *see Pyles v. Bowen*, 849 F.2d 846, 848 (4th Cir. 1988) (*citing Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986)). Rather, the court must uphold the Commissioner's decision if it is supported by substantial evidence. "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 390, 401; *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005). Thus, the court must carefully scrutinize the entire record to assure there is a sound foundation for the Commissioner's findings and that her conclusion is rational. *See Vitek*, 438 F.2d at 1157–58; *see also Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). If there is substantial evidence to support the decision of the Commissioner, that decision must be affirmed "even should the court disagree with such decision." *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).

B.    Analysis

1.    Medical Opinions

Medical opinions are statements from medical providers who qualify as acceptable medical sources under 20 C.F.R. § 416.913(a) that reflect judgments about the nature and severity of the claimant's impairment(s), including his symptoms, diagnosis and prognosis, what he can still do despite impairment(s), and his physical or mental

restrictions. 20 C.F.R. § 416.927(a)(2). The ALJ must weigh all medical opinions. 20 C.F.R. § 416.927(c). If a treating medical source provides an opinion on the nature and severity of a claimant's impairments that is well-supported by medically-acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case record, the ALJ must accord controlling weight to that opinion. 20 C.F.R. § 416.927(c)(2). If the ALJ does not accord controlling weight to a treating physician's opinion, he must weigh all medical opinions based on the factors set forth in 20 C.F.R. § 416.927(c). However, "[a]n opinion that a claimant is 'disabled' or 'unable to work' is not a medical opinion but an administrative finding, and a physician's opinion on this ultimate issue is not entitled to special weight." *Dowdle v. Astrue*, C/A No. 2:10-2308-MBS, 2012 WL 887471 at *8 (D.S.C. March 15, 2012), *citing* 20 C.F.R. § 416.927(d) (Opinions that a claimant is disabled are not medical opinions, "but are, instead opinions on issues reserved to the Commissioner because they are administrative findings that are dispositive of a case; i.e., that would direct the determination or decision of disability").

a.    Dr. Veit's Statement

Plaintiff argues that the ALJ erred in failing to mention and discuss a statement in Dr. Veit's treatment notes that he had been "unable to work for the past four years." [ECF No. 13 at 10]. He contends that Dr. Veit's statement was entitled to great weight in light of the agency's rules according deference to the opinions of treating physicians. *Id.*

The Commissioner argues that Dr. Veit did not provide an opinion about Plaintiff's ability to work over the prior four-year period, but instead related Plaintiff's

subjective report.[3] [ECF No. 15 at 20]. She maintains Dr. Veit's statement did not qualify as an opinion under the regulations because he did not assess specific functional limitations. *Id.*

The undersigned recommends a finding that Dr. Veit's statement was not a medical opinion, and thus, was not entitled to any particular deference under 20 C.F.R. § 416.927(c)(2) or even required to be weighed based on the provisions set forth 20 C.F.R. § 416.927(d). Although Dr. Veit's statement that Plaintiff had "been unable to work for the past four years" was set forth in the "examination" section of the treatment note, the record suggests that Dr. Veit was more likely repeating Plaintiff's subjective complaint than providing an objective assessment. *See* Tr. at 410. Dr. Veit examined Plaintiff during a single visit on July 3, 2012. *See id.* Plaintiff was treated by Dr. Joudeh at the same facility on four occasions between July 25, 2011, and June 4, 2012, but the record does not suggest that Dr. Veit had access to any records prior to July 2011 and does not even indicate he reviewed Dr. Joudeh's treatment notes. *See* Tr. at 414, 418, 422–23, 426. Based on Dr. Veit's one-time assessment and his lack of access to Plaintiff's medical records from four years prior to the date of his treatment, it is unlikely that he was providing an opinion as to Plaintiff's ability to work over the prior four year period and much more likely that he was merely restating Plaintiff's complaint. Furthermore, even if

---

[3] The Commissioner argues that, although the statement that Plaintiff had been "unable to work for the past four years" was included in the objective portion of the examination notes, it was based on the claimant's subjective statement to Dr. Veit. [ECF No. 15 at 20]. She points out that Dr. Veit only examined Plaintiff on one occasion and lacked the treatment relationship necessary to comment on Plaintiff's ability to work over the prior four-year period. *Id.*

Dr. Veit were providing an opinion regarding Plaintiff's ability to work over the prior four-year period, such an opinion carries no weight under 20 C.F.R. § 416.927 because it is an opinion on the ultimate issue of disability. Therefore, the undersigned recommends the court find that the ALJ did not err in failing to consider Dr. Veit's statement that Plaintiff had been "unable to work for the past four years."

> b.    Dr. Peabody's Statement

Plaintiff argues the ALJ neglected portions of Dr. Peabody's report pertaining to his abilities to lift, carry, sit, stand, and walk. [ECF No. 13 at 10]. Plaintiff maintains the restrictions the ALJ ignored suggested he was unable to complete an eight-hour workday. *Id.*

The Commissioner argues that, although the ALJ gave great weight to Dr. Peabody's general observations and conclusions, he was not required to include all of Dr. Peabody's limitations in his RFC determination. [ECF No. 15 at 21]. She also maintains that Dr. Peabody indicated that the restrictions he set forth had not lasted and were not expected to last for a period of twelve months or more. *Id.* at 22. She contends that the ALJ was justified in not accepting all of the limitations set forth by Dr. Peabody because Dr. Peabody expressed doubt about the accuracy of his examination findings given Plaintiff's exaggerated presentation. *Id.*

The ALJ indicated the following with respect to his consideration of Dr. Peabody's examination and statements:

> At the August 2012 State agency CE with Alan Peabody, M.D. mental status exam showed: he could barely spell "world;" he performed serial 7's subtractions, but with great difficulty; he knew the day, date and the

21

> president, but not the vice president. Dr. Peabody noted that the claimant was a well-developed, depressed-appearing, 38-year-old white male who constantly looked at the floor and talked in a whisper, that he had a whiny voice and tended to give excuses for everything (Ex. 16F).

Tr. at 15. He discussed Dr. Peabody's physical examination findings and indicated Dr. Peabody diagnosed "personality disorder; degenerative disease of the spine by history; drug addiction; multiple head injuries with resultant brain damage; empyema of the right lung, cured; possible chronic obstructive pulmonary disease; and depression with somatic overlay" and indicated Dr. Peabody provided "'[t]his fellow tends to walk like an old man and makes the most of whatever symptoms he has' (Ex. 16F)." Tr. at 19. The ALJ ultimately gave great weight to Dr. Peabody's "observations and conclusions, as they are not inconsistent with the above RFC limitations," and noted that "the physical exam did not show limitations any greater than those outlined in the above RFC." Tr. at 23.

The undersigned recommends a finding that the ALJ adequately considered Dr. Peabody's medical opinion in accordance with 20 C.F.R. § 416.927. The ALJ indicated Dr. Peabody performed a consultative examination at the request of the state agency in August 2012. *See* Tr. at 21. This suggested Dr. Peabody had an examining relationship with Plaintiff, but no treatment relationship. *See* 20 C.F.R. § 416.927(c)(1), (2). Dr. Peabody's observations from his physical examination of Plaintiff were largely consistent with other evidence in the record, except for indications that Plaintiff walked with a small pace, wide-based gait, and in a "somewhat stooped manner." *See* Tr. at 437. The ALJ explicitly addressed the inconsistency of Dr. Peabody's observation of Plaintiff's gait when he found that the record as a whole suggested Plaintiff had no severe limitation in

his ability to ambulate. *See* Tr. at 16; *see also* 20 C.F.R. § 416.927(c)(4). The other abnormalities noted on examination, which included decreased lumbar flexion, extension, and lateral flexion, decreased bilateral knee flexion, and positive straight-leg raise, were consistent with the findings of other examining physicians and were accommodated by the restrictions the ALJ included in the RFC assessment. *See* Tr. at 16, 191, 410, 414, 422, 426; *see also* 20 C.F.R. § 416.927(c)(3). Therefore, it was appropriate for the ALJ to give great weight to Dr. Peabody's observations and conclusions. *See* Tr. at 23.

The undersigned further recommends the court find the ALJ properly considered Dr. Peabody's opinion in assessing Plaintiff's RFC. Dr. Peabody indicated in a medical source statement that Plaintiff had greater restrictions than those identified by the ALJ in his RFC assessment in that he found Plaintiff was limited to occasionally lifting up to 10 pounds and 11 to 20 pounds; sitting, standing, and walking for two hours each during a workday; occasionally reaching, handling, fingering, feeling, pushing/pulling, and operating foot controls; never stooping, kneeling, crouching, or crawling; occasionally being exposed to unprotected heights, moving mechanical parts, operation of motor vehicles, humidity and wetness, extreme cold, extreme heat, and vibrations; and exposure of only moderate noise. *Compare* Tr. at 16, *with* Tr. at 442–44. However, Dr. Peabody also indicated that the restrictions assessed in the medical source statement had not lasted and were not expected to last for 12 consecutive months. Tr. at 446. To be considered disabling, an impairment must have lasted or be expected to result in death or last for a period of 12 months or more at a level that prevents the performance of past work and any other substantial gainful work in the national economy. *See* 20 C.F.R. § 416.905(a).

Therefore, it was reasonable for the ALJ to not include in his RFC assessment limitations that Dr. Peabody specified had not lasted and were not expected to last for a period of 12 months or more. Had the ALJ included the specific restrictions set forth by Dr. Peabody in his RFC assessment, he would have assessed restrictions contrary to Dr. Peabody's opinion because he would have found that the restrictions had lasted or were expected to last for a period of 12 months or more. Furthermore, Dr. Peabody expressed little confidence in Plaintiff's efforts during testing and suggested Plaintiff would benefit from psychological testing, an MRI, and physical therapy. *See Tr.* at 437. In the context of Dr. Peabody's report, it appears that these suggestions were made in an effort to determine if Plaintiff had legitimate impairments to corroborate what Dr. Peabody interpreted as Plaintiff's largely exaggerated response to testing. Given Dr. Peabody's lack of confidence in Plaintiff's effort and his indication that the assessed restrictions had not lasted and were not expected to last for a period of 12 months or more, the undersigned recommends the court find that the ALJ properly determined the specific restrictions identified by Dr. Peabody should not be included in his RFC assessment.

2.     Improper VE Hypothetical

Plaintiff argues the ALJ posed improper hypothetical questions to the VE because the ALJ neglected to include all of his restrictions. [ECF No. 13 at 10]. Plaintiff maintains that the ALJ should have included restrictions on his abilities to walk and to flex, extend, and rotate his lower back. *Id.* at 11. He further maintains the ALJ should have specified that his pace was restricted. *Id.* at 12. He argues the ALJ also failed to impose restrictions based on the physical limitations cited by Dr. Peabody and what Dr.

24

Peabody classified as a "considerable personality disorder." *Id.* at 12–13. He contends the ALJ neglected to include in the hypothetical to the VE any functional limitations based on his severe depression, anxiety, and personality disorder. *Id.* at 13–14.

The Commissioner argues the ALJ included in his hypothetical questions to the VE all functional limitations that were credible and supported by substantial evidence. [ECF No. 15 at 18].

At step five of the sequential evaluation process, the Commissioner bears the burden of providing evidence of a significant number of jobs in the national economy that a claimant could perform. *Walls v. Barnhart*, 296 F.3d 287, 290 (4th Cir. 2002). The purpose of bringing in a VE is to assist the ALJ in determining if the Commissioner has met this burden. *Walker v. Bowen*, 889 F.2d 47, 50 (4th Cir. 1989). For a VE's opinion to be relevant, "it must be based upon a consideration of all other evidence in the record" and "must be in response to proper hypothetical questions which fairly set out all of claimant's impairments." *Id.*; *see also Johnson*, 434 F.3d at 659; *English v. Shalala*, 10 F.3d 1080, 1085 (4th Cir. 1993). An ALJ has discretion in framing hypothetical questions as long as they are supported by substantial evidence in the record, but the VE's testimony cannot constitute substantial evidence in support of the Commissioner's decision if the hypothesis fails to conform to the facts. *See Swaim v. Califano*, 599 F.2d 1309, 1312 (4th Cir. 1979).

The ALJ found Plaintiff's severe impairments to be degenerative disease of the spine, history of empyema[4] of the right lung and possible COPD, borderline intellectual ability, major depressive disorder, and anxiety. Tr. at 13. He indicated that he imposed the following limitations based on Plaintiff's "alleged degenerative disease of spine":

> perform light work (lift, carry, push, or pull 20 pounds occasionally and 10 pounds frequently; stand or walk 6 hours in an 8-hour workday; and sit 6 hours in an 8-hour workday), or, in the alternative, perform sedentary work (lift, carry, push, or pull 10 pounds occasionally and less than 10 pounds frequently; stand or walk 2 hours in an 8-hour workday; and sit 6 hours in an 8-hour workday), have no use of ladder/rope/scaffolds; and occasionally bend, stoop, crawl, crouch, balance.

Tr. at 19. Based on Plaintiff's history of empyema of the right lung and possible COPD, the ALJ indicated he should "avoid concentrated exposure to dust, fumes, odors, gases, or pulmonary irritants." Tr. at 20. Finally, based on Plaintiff's borderline intellectual ability, major depressive disorder, and anxiety, the ALJ included in the RFC assessment that Plaintiff was functionally illiterate and was limited to simple, routine, and repetitive tasks with no ongoing public contact and low stress, defined as only occasional changes in work setting or decision making. Tr. at 21. The ALJ's RFC assessment was consistent with the hypothetical questions posed to the VE that yielded the jobs identified in the ALJ's decision. *Compare* Tr. at 16 and 25, *with* Tr. at 50–51.

The undersigned recommends a finding that the ALJ posed proper hypothetical questions to the VE based on the evidence in the record at the time of the hearing and appropriately relied on the VE's testimony to satisfy the Commissioner's burden at step

---

[4] Although the ALJ indicated "history of emphysema of right lung," this appears to be a typo in light of a review of the medical record and the ALJ's subsequent explanation.

five. The ALJ found that the record did not support the presence of severe limitations in Plaintiff's ability to ambulate. *See* Tr. at 16 (noting that the longitudinal record did not mention use of a cane, a cane was not prescribed, and Plaintiff's gait was described as "grossly normal" during most examinations). He accommodated Plaintiff's restricted abilities to flex, extend, and rotate his lower back by limiting him to occasional bending, stooping, and crouching. Tr. at 19.

The undersigned further recommends a finding that the ALJ properly considered the post-hearing consultative examinations and opinions of Drs. Jones and Peabody and that their opinions were not inconsistent with the assessed RFC or the vocational testimony that supported the Commissioner's findings at step five. During the hearing, Plaintiff's attorney requested that the ALJ refer Plaintiff for consultative examinations and the ALJ granted the request. Tr. at 34. Plaintiff's attorney did not request a subsequent hearing or ask that vocational interrogatories be sent after those examinations. *See* Tr. at 161. Therefore, the vocational testimony in the record consists of the hearing testimony, which was obtained prior to Plaintiff's consultative examinations with Drs. Jones and Peabody. Despite the absence of findings and opinions from Drs. Jones and Peabody at the time of the VE's testimony, the record as a whole did not support further limitations based on Plaintiff's pace, his physical functioning, or the presence of a personality disorder. Although Dr. Jones indicated Plaintiff may be slow in completing assignments, he also indicated Plaintiff "appeared to lack motivation to perform at his maximum level" and that "this could have had the effect of suppressing test scores." Tr. at 429, 433. Given Dr. Jones' skepticism regarding the results of testing and the absence

of evidence in the remainder of the record to suggest Plaintiff's pace was restricted, the undersigned recommends the court find that the ALJ did not err in failing to include in the RFC a provision regarding restricted pace. As for Dr. Peabody's indications of more restrictive physical limitations than those set forth in the RFC, the undersigned notes that Dr. Peabody indicated those restrictions had not lasted and were not expected to last for a consecutive period of twelve months and also expressed doubt regarding the effort put forth by Plaintiff during testing. *See* Tr. at 437, 446. Furthermore, while Dr. Peabody indicated a diagnostic impression of personality disorder, he also suggested that Plaintiff should obtain psychological testing to diagnose possible personality disorder. *See* Tr. at 437. Plaintiff underwent psychological testing with Dr. Jones, who did not diagnose personality disorder, but instead diagnosed suspected borderline intellectual ability based on history and suspected major depressive disorder, single episode. Tr. at 430. Because Dr. Peabody deferred his diagnosis of personality disorder to psychological testing and because psychological testing and examination by Dr. Jones, a psychologist, failed to yield a diagnosis of personality disorder, the undersigned recommends the court find no error on the part of the ALJ in failing to include restrictions based upon a diagnosis of personality disorder.

### 3.     New Evidence Submitted to Appeals Council

On May 15, 2013, James Hayes, M.D., completed a mental residual functional capacity evaluation in which he indicated Plaintiff's diagnoses included bipolar/PTSD, narcotics dependence, and chronic back pain. Tr. at 448. He indicated Plaintiff had poor memory, sleep disturbance, personality change, mood disturbance, emotional

disturbance, loss of intellectual ability of 15 IQ points or more, substance dependence, recurrent panic attacks, anhedonia or pervasive loss of interest, psychomotor agitation, paranoia or inappropriate suspiciousness, difficulty thinking or concentrating, feelings of guilt/worthlessness, oddities of thought, speech or behavior, perceptual disturbance, illogical thinking or loosening of associations, and intrusive recollections of a traumatic experience. Tr. at 448–49. He estimated Plaintiff would be absent from work more than three times a month as a result of his impairments or treatment and that he could not consistently meet the time requirements of a normal workweek on a sustained basis. Tr. at 449–50. He assessed Plaintiff to have marked restrictions of activities of daily living, marked difficulties in maintaining social functioning, marked ability to respond appropriately to supervisors, coworkers, and the public; frequent deficiencies of concentration, persistence, or pace resulting in failure to complete tasks in a timely manner; and continual episodes of deterioration or decompensation in work or work-like settings. Tr. at 450. He indicated Plaintiff was markedly limited with respect to the following abilities: to remember locations and work-like procedures; to understand and remember very short and simple instructions; to understand and remember detailed instructions; to carry out very short and simple instructions; to carry out detailed instructions; to maintain attention and concentration for extended periods; to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; to sustain an ordinary routine without special supervision; to work in coordination with or proximity to others without interruptions from psychologically-based symptoms and to perform at a consistent pace without an unreasonable number and

length of rest periods; to interact appropriately with the general public; to ask simple questions or request assistance; to accept instructions and respond appropriately to criticism from supervisors; to get along with coworkers or peers without distracting them or exhibiting behavioral extremes; to maintain socially-appropriate behavior and to adhere to basic standards of neatness and cleanliness; to interact appropriately with supervisors; to follow work rules; to use appropriate judgment; to cope with work stresses; to function independently; to maintain personal appearance and hygiene; to behave in an emotionally-stable manner; to relate predictably in social situations; to consistently demonstrate reliability; to respond appropriately to changes in the work setting; to be aware of normal hazards and take appropriate precautions; to travel in unfamiliar places or use public transportation; and to set realistic goals or make plans independently of others. Tr. at 451–52. Dr. Hayes indicated Plaintiff could not manage benefits in his own best interest. Tr. at 452. He indicated Plaintiff's condition had existed and persisted with the restrictions outline in the evaluation since at least March 2010. *Id.*

Plaintiff argues that the Appeals Council erred in failing to consider new evidence. [ECF No. 13 at 14]. He maintains that the Appeals Council failed to indicate the weight accorded to the new evidence, to analyze the evidence, and to provide specific reasons for its conclusion. *Id.* Plaintiff contends the Appeals Council erred in failing to accord great weight to Dr. Hayes' opinion. *Id.*

The Commissioner argues the Appeals Council considered the evidence and was not required to explain the reasons for its conclusion. [ECF No. 15 at 23]. Although Dr. Hayes' opinion purports to be an assessment for the period beginning in March 2010, the

30

Commissioner contends that the record contains no medical evidence or treatment notes to support that assertion. *Id.* at 25. Finally, she maintains that, because Dr. Hayes' opinion was not supported, it would not have changed the outcome of the case if it had been before the ALJ. *Id.*

The regulations "specifically permit claimants to submit additional evidence, not before the ALJ, when requesting review by the Appeals Council." *Meyer v. Astrue*, 662 F.3d 700, 705 (4th Cir. 2011). "If new and material evidence is submitted, the Appeals Council shall consider the additional evidence only where it relates to the period on or before the date of the administrative law judge hearing decision." 20 C.F.R. § 416.970(b). "Evidence is new 'if it is not duplicative or cumulative' and is material if there is 'a reasonable possibility that the new evidence would have changed the outcome.'" *Meyer*, 662 F.3d at 705, *citing Wilkins v. Sec'y, Dep't of Health & Human Servs.*, 953 F.2d 93, 96 (4th Cir. 1991). If the new and material evidence relates to the period on or before the date of the ALJ's hearing decision, the Appeals Council should evaluate it as part of the entire record. 20 C.F.R. § 416.970(b). "[I]f the Appeals Council finds that the ALJ's 'action, findings, or conclusion is contrary to the weight of the evidence currently of record,'" it shall grant the request for review and either issue its own decision or remand the case to the ALJ for consideration of the evidence. *Meyer*, 662 F.3d at 705, *citing* 20 C.F.R. § 404.967, 404.977(a), and 404.979. However, if after reviewing the entire record, including the new and material evidence, the Appeals Council "finds the ALJ's action, findings, or conclusions not contrary to the weight of the evidence, the Appeals Council can simply deny the request for review" without explaining its rationale. *Id.*

31

The Fourth Circuit's decision in *Bird v. Comm'r of Soc. Sec. Admin.*, 699 F.3d 337, 340–41 (4th Cir. 2012), suggests that evidence created after the ALJ's decision may be considered as new and material evidence and given retrospective consideration under certain circumstances. While *Bird* specifically addressed evidence created after a claimant's date last insured, this court has suggested its holding extends to situations in which evidence arises after the date of an ALJ's decision, but before the Appeals Council makes a decision to grant or deny review. *See Dickerson v. Colvin*, C/A No. 5:12-33-DCN, 2013 WL 4434381, at *14 (D.S.C. Aug. 14, 2013) (holding that a medical opinion dated more than a year after the ALJ's decision was new and material evidence that warranted remand); *see also Evans v. Colvin*, C/A No. 8:13-1325-DCN, 2014 WL 4955173, at *28 (D.S.C. Sept. 29, 2014) (holding that new evidence did not require reconsideration of the ALJ's decision because the new evidence did not appear to have any bearing upon whether the plaintiff was disabled during the time period relevant to the ALJ's decision).

The undersigned recommends the court find that the Appeals Council did not err in failing to remand the claim based on Dr. Hayes' opinion. The Appeals Council considered the new evidence in accordance with the Fourth Circuit's rulings in *Meyer* and *Bird* and 20 C.F.R. § 416.970(b). It included in the record the mental capacity form completed by Dr. Hayes and indicated that it considered Dr. Hayes' opinion, but found that it did not "provide a basis for changing the Administrative Law Judge's decision. Tr. at 1–2, 4. The Appeals Council was not required to explain its rationale because it denied review after examining the record, including the new evidence, and found that the ALJ's

actions, findings, and conclusions were not contrary to the weight of the evidence. *See Meyer*, 662 F.3d at 705. Although Dr. Hayes indicated Plaintiff's condition and restrictions had been present since at least March 2010, his opinion was inconsistent with the record and not supported by any treatment notes. *See* 20 C.F.R. 416.927(c)(3), (4). Aside from indicating Plaintiff's diagnoses, Dr. Hayes only checked the boxes and did not explain or provide support for any of the restrictions he assessed. *See* Tr. at 448–52. The evidence submitted to the Appeals Council consisted merely of a mental residual functional capacity evaluation form and lacked any indication of an examining or treatment relationship. *See* 20 C.F.R. 416.927(c)(1), (2). It also did not indicate that Dr. Hayes had any particular medical specialty or contain any other factors that would encourage the decision maker to accord it any significant weight. *See* 20 C.F.R. § 416.927(c)(5), (6). Therefore, the undersigned recommends the court find that the Appeals Council properly concluded that Dr. Hayes' opinion provided no basis for changing the ALJ's decision.

### 4.     Substantial Evidence

Plaintiff argues that evidence does not support the ALJ's conclusion that he could perform light or sedentary work. [ECF No. 13 at 20]. The Commissioner maintains that substantial evidence supports her final decision that Plaintiff did not meet the standards for a finding of disability under the Social Security Act. [ECF No. 15 at 14].

"In evaluating whether or not the ALJ's ultimate conclusion is supported by substantial evidence, this court can do no more than require that the ALJ carefully consider the evidence, make reasonable and supportable choices and explain his

conclusions." *McCall v. Apfel*, 27 F. Supp. 2d 723, 731 (S.D.W.Va. 1999). "[T]he Commissioner, not the court, is charged with resolving conflicts in the evidence." *Belcher v. Apfel*, 56 F. Supp. 2d 662, 665 (S.D.W.Va. 1999). However, the courts "must not abdicate their traditional functions; they cannot escape their duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." *Id.*, *citing Oppenheim v. Finch*, 495 F.2d 396, 397 (4th Cir. 1974).

Although Plaintiff argues that the ALJ failed to consider the objective medical evidence, the opinions of disability by the treating or examining physicians, the credibility of his testimony, and the vocational factors, the undersigned's review of the record reveals that the ALJ considered all of these elements and cited sufficient evidence to support his conclusions. *See* ECF No. 13 at 18. He referenced the objective findings from Plaintiff's medical providers and the consultative examiners. Tr. at 14–21. He alluded to Plaintiff's infrequent and generally non-invasive treatment. Tr. at 22. He discussed the medical opinions in the record. Tr. at 23. He indicated that Dr. Smith, who treated Plaintiff five times between March 2010 and March 2011, noted Plaintiff "was a pretty healthy guy, a little thin, but other than that he is healthy and has not required invasive care." Tr. at 18. He recited Plaintiff's testimony and disability reports, but referenced Plaintiff's daily activities, which included playing pool and softball, fishing, self-employment in HVAC work, and visiting the grocery store, Wal-Mart and the homes of family and friends and noted that these activities would "arguably cause him pain." Tr. at 21–22. He cited indications of possible medication abuse and a lack of complaints regarding the effectiveness or side effects of medications. Tr. at 17, 22. He mentioned the

evidence regarding Plaintiff's tobacco abuse, positive drug test result, and indications to his physicians that he was using marijuana and buying Methadone off the street. Tr. at 22–23. Finally, the ALJ relied on the VE's testimony to find Plaintiff was capable of performing work in the national economy. Tr. at 23–26, 50–51. In light of the ALJ's well-reasoned conclusions, the undersigned recommends the court find his decision was supported by substantial evidence.

III.    Conclusion and Recommendation

The court's function is not to substitute its own judgment for that of the Commissioner, but to determine whether her decision is supported as a matter of fact and law. Based on the foregoing, the undersigned recommends the Commissioner's decision be affirmed.

IT IS SO RECOMMENDED.

March 30, 2015                              Shiva V. Hodges
Columbia, South Carolina                   United States Magistrate Judge

**The parties are directed to note the important information in the attached
"Notice of Right to File Objections to Report and Recommendation."**

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Robin L. Blume, Clerk
United States District Court
901 Richland Street
Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).