# IN THE UNITED STATES DISTRICT COURT
# DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Larry Clayton McGarity, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Civil Action No. 1:14-1306-RMG |
| vs. ) | |
| ) | |
| Carolyn W. Colvin, Commissioner ) | |
| of Social Security, ) | **ORDER** |
| ) | |
| Defendant. ) | |
| ) | |
| ) | |

Plaintiff has brought this action pursuant to 42 U.S.C. § 405(g) seeking judicial review of the final decision of the Commissioner of Social Security denying his claim for Supplemental Security Income ("SSI"). In accord with 28 U.S.C. § 636(b) and Local Civil Rule 73.02 DSC, this matter was referred to a United States Magistrate Judge for pre-trial handling. The Magistrate Judge issued a Report and Recommendation on March 30, 2015, recommending that the Commissioner's decision be affirmed. (Dkt. No. 17). The Plaintiff filed objections to the Magistrate Judge's Report and Recommendation, and the Commissioner filed a reply. (Dkt. Nos. 20, 21). As more fully set forth below, the decision of the Commissioner is reversed and remanded for further action consistent with this order.

## Legal Standard

The Magistrate Judge makes only a recommendation to this Court. The recommendation has no presumptive weight, and the responsibility to make a final determination remains with the Court. *Mathews v. Weber*, 423 U.S. 261 (1976). The Court is charged with making a *de novo*

determination of those portions of the Report and Recommendation to which specific objection is made. The Court may accept, reject, or modify, in whole or in part, the recommendation of the Magistrate Judge. 28 U.S.C. § 636(b)(1).

The role of the federal judiciary in the administrative scheme established by the Social Security Act is a limited one. The Act provides that the "findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. §405(g). "Substantial evidence has been defined innumerable times as more than a scintilla, but less than a preponderance." *Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). This standard precludes *de novo* review of the factual circumstances that substitutes the Court's findings of fact for those of the Commissioner. *Vitek v. Finch*, 438 F.2d 1157 (4th Cir. 1971).

Although the federal court's review role is a limited one, "it does not follow, however, that the findings of the administrative agency are to be mechanically accepted. The statutorily granted right of review contemplates more than an uncritical rubber stamping of the administrative action." *Flack v. Cohen*, 413 F.2d 278, 279 (4th Cir. 1969). Further, the Commissioner's findings of fact are not binding if they were based upon the application of an improper legal standard. *Coffman v. Bowen*, 829 F.2d 514, 519 (4th Cir. 1987).

The Commissioner, in passing upon an application for disability benefits, is required to undertake a five-step sequential process. At Step One, the Commissioner must determine whether the applicant is engaged in substantial gainful work. 20 C.F.R. § 404.1520(a)(4)(i). If the claimant is not engaged in substantial gainful employment, the Commissioner proceeds to Step Two, which involves a determination whether the claimant has any "severe medically determinable physical or mental impairment." *Id.* § 404.1520(a)(4)(ii). If the claimant has one

or more severe impairments, the Commissioner proceeds to Step Three, which involves a determination whether any impairment of the claimant satisfies any one of a designated list of impairments that would automatically render the claimant disabled. *Id.* § 404.1520(a)(4)(iii).

If the claimant does not have a listed impairment, the Commissioner must proceed to Step Four, which involves an assessment of the claimant's Residual Functional Capacity ("RFC"). *Id.* § 404.1520(a)(4)(iv). This requires assessment of the claimant's ability "to meet the physical, mental, sensory, and other requirements of work . . . ." *Id.* § 404.1545(a)(4). In determining the claimant's RFC, the Commissioner "must first identify the individual's functional limitations or restrictions" and provide a narrative "describing how the evidence supports each conclusion, citing specific medical facts . . . and nonmedical evidence . . . ." SSR 96-8p, 61 Fed. Reg. 34474, 34475, 34478 (July 2, 1996). Where a claimant has multiple mental and/or physical impairments, the Commissioner must consider the combined effect of those multiple impairments on the claimant's ability to meet the requirements of work. *Walker v. Bowen*, 889 F.2d 47, 49-50 (4th Cir. 1989).

Once the claimant's RFC is determined, the Commissioner must assess whether the claimant can do his past relevant work. 20 C.F.R. §§ 404.1520(4)(iv), 1545(a)(5)(i). If the claimant, notwithstanding the RFC determination, can still perform his past relevant work, he is deemed not to be disabled. If the claimant cannot perform his past relevant work, the Commissioner then proceeds to Step Five to determine if there is other available work in the national economy he can perform in light of the RFC determination. *Id.* § 404.1520(a)(4)(v).

If it is determined that the claimant cannot return to his prior work, the burden shifts to the Commissioner to establish whether the claimant can perform other work that exists in the

national economy. *Walker v. Bowen*, 889 F.2d at 50. To the extent that the claimant's impairments involve both exertional and nonexertional impairments, the Commissioner is obligated to rely upon a vocational expert to establish that the claimant retains the ability to perform specific jobs in the national economy. *Id.* Such opinions by vocational experts are normally offered in response to a hypothetical or a series of hypothetical questions. It is essential that the vocational expert's opinions be based on consideration of all of the evidence in the record and that the hypothetical questions set out all of the claimant's impairments. *Id.* at 50-51.

Under the regulations of the Social Security Administration, the Commissioner is obligated to consider all medical evidence and the opinions of all medical sources. 20 C.F.R. § 404.1545. This includes the duty to "evaluate every medical opinion we receive." 20 C.F.R. § 404.1527(c). Special consideration is to be given to the opinions of treating physicians of the claimant, based on the view that "these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [the claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations." *Id.* § 404.1527(c)(2). Under some circumstances, the opinions of the treating physicians are to be accorded controlling weight. Even where the opinions of the treating physicians of the claimant are not accorded controlling weight, the Commissioner is obligated to weigh all medical opinions in light of a broad range of factors, including the examining relationship, the treatment relationship, length of treatment, nature and extent of the treatment relationship, supportability of the opinions in the medical record, consistency, and whether the treating physician is a specialist. Thus, the opinions of treating and

examining physicians are generally given more weight than the opinions of non-examining and non-treating physicians.

## Factual Background

The claimant, then 37 years of age, applied for SSI alleging disability on February 28, 2011, and ultimately asserted an alleged onset date of November 18, 2009. Transcript of Record ("Tr.") 13. The claimant asserted that his disability arose from a combination of physical and mental impairments. Medical records submitted in support of Plaintiff's claim indicated that he had a history of chronic pain, primarily in his neck and back. The record further demonstrated that there had been little radiographic work up of his neck and spinal complaints, but there had been periodic findings of positive straight leg raises. Various physicians prescribed narcotic pain medications to provide claimant relief from his symptoms. Tr. 165, 169, 282, 284-5, 288-9, 290-91, 410, 414, 418, 426, 422-23. The record also indicated that Plaintiff had a history of respiratory difficulties and an anxiety related impairment. Tr. 212-3, 262, 290-91, 414, 422.

An administrative hearing was held in this matter on August 1, 2012, before an Administrative Law Judge ("ALJ"). In the course of the hearing, the ALJ observed that the claimant's responses were "slowed and delayed" and asked for an explanation. The claimant responded that "I'm a slow person. I've always been this way." Tr. 45-6. Plaintiff further explained that he had been placed in classes for "slow children" in school and failed the sixth grade on multiple occasions. Tr. 38, 46. He also testified he could not read or write. Plaintiff testified that his limitations "affect[] me a lot." He testified that he resided with his mother and did not know how he would survive without the assistance of his now elderly parents. Tr. 45.

The record contained reports by non-examining and non-treating health care providers. A psychiatric assessment was prepared by Gary Calhoun, Ph.D., who found that Plaintiff had minimal mental impairments that created, at most, mild limitations on the claimant's capacity for work. Tr. 292-305. A physical residual functional capacity assessment was performed by Dr. Ted Roper, who according to the South Carolina Board of Medical Examiners is trained as a radiologist.[1] Dr. Roper concluded that Plaintiff had the capacity to lift 50 lbs. occasionally and 25 pounds frequently and could sit, stand and walk at least six hours in an eight hour day. Tr. 306-13. At the time of the administrative hearing, the record did not contain any written assessments by any examining or treating physician.

A vocational expert testified at the administrative hearing and confirmed that she had reviewed the record in the case and was familiar with Plaintiff's vocational background. Tr. 48. She testified that Plaintiff could not perform his prior work because of identified limitations. Tr. 50. She was asked to assume "an individual [of] the same age, education and work experience" and questioned whether there would be jobs available if Plaintiff was limited to light and/or sedentary work. The vocational expert testified that there were jobs available regardless of whether Plaintiff was limited to light or sedentary work. Tr. 50-51. The vocational expert was also asked if that opinion might change if Plaintiff's impairments required him to miss more than three days per month or render him unable to work on an average of one hour per day, and the vocational expert stated that under either circumstance there would be no jobs available in the national economy that Plaintiff could perform. Tr. 51-2.

---

[1] *See*, www.sc.gov, South Carolina Department of Labor, Licensing and Regulation (LLR), Licensee Lookup.

Apparently troubled by the lack of documentation regarding both the claimant's mental and physical assessments, the ALJ ordered, subsequent to the administrative hearing, examinations of Plaintiff by an internist and a psychologist. The psychological examination was performed by Randall Jones, Ph.D., who performed a variety of diagnostic tests and personally evaluated Plaintiff. The diagnostic tests showed a full scale IQ of 55, which if valid would suggest the claimant was mentally retarded. Dr. Jones concluded, however, that while Plaintiff was unable to read and write, his actual level of ability was "borderline intellectual ability based on history." Tr. 428-34.

Plaintiff was also examined by Dr. Alan Peabody, whose training included internal medicine.[2] Dr. Peabody's diagnostic impressions included degenerative disease of the spine by history and "multiple head injuries with resultant brain damage." He also found positive straight leg raises from a sitting position. Dr. Peabody suggested that an MRI of the back be performed so that a definitive diagnosis of any spinal condition could be made. Dr. Peabody further opined that Plaintiff could lift or carry 10 lbs. only occasionally and could not sit, stand or walk longer than two hours in an eight hour day. Tr. 435-46.

The ALJ did not recovene the administrative hearing following the receipt of the two reports or otherwise submit to the vocational expert these two additional reports of examining doctors to determine whether they impacted her opinions regarding the availability of jobs in the national economy Plaintiff could perform. Instead, the ALJ issued an opinion on October 12, 2012, finding that Plaintiff was not disabled under the Social Security Act. In reaching this conclusion, the ALJ found that the Plaintiff's severe impairments included degenerative disease

---

[2] *See* LLR website, *supra* note 1, at 6.

of the spine, history of emphysema with possible COPD, borderline intellectual ability, major depressive disorder and anxiety. Tr. 13-16. The ALJ referenced Dr. Peabody's finding of brain damage in his Step Two analysis but made no finding regarding whether it was a severe or non-severe impairment. Tr. 13-16. The ALJ found that Plaintiff did not have a Listed Impairment at Step Three and made at Step Four an alternative finding that Plaintiff had a residual functional capacity for either light or sedentary work. Tr. 16-23. In making this alternative finding, the ALJ did not address specifically Dr. Peabody's opinions that Plaintiff could not lift or carry more than 10 lbs. occasionally or sit, stand or walk longer than two hours in an eight hour day. Tr. 441-42.[3]

The ALJ found that Plaintiff could not perform his prior work and then, relying on the vocational expert's opinions offered at the August 1, 2012 hearing, concluded there were jobs in the national economy which Plaintiff could perform. On this basis, the ALJ found that Plaintiff was not disabled under the Social Security Act. Tr. 24-26. Plaintiff thereafter appealed unsuccessfully to the Appeals Council for review and timely filed an appeal with this Court.

## Discussion

### A. The vocational expert's opinions did not consider all of the Plaintiff's impairments in the record.

It is well settled that a vocational expert's opinions must consider all of the "claimant's abilities and limitations" set forth in the record. *Walker v. Bowen*, 889 F.2d at 50-51. Following the administrative hearing of August 1, 2012, the ALJ requested and obtained reports of two

---

[3] The ALJ mentioned that he gave "great weight" to Dr. Peabody's opinions (Tr. 23), but if this included Dr. Peabody's limitations on lifting, carry, walking,sitting and standing then the Plaintiff would have been limited to only sedentary work. SSR 83-10, 1983 WL 31251 (1983).

examining providers who offered extensive findings and opinions relating to Plaintiff's physical and mental impairments. These reports were not considered by the vocational expert, and her opinions were, thus, not based on the full record evidence in this case. Reversal and remand are necessary to obtain vocational expert opinions that are based on all of Plaintiff's abilities and limitations.

The Commissioner argues that Plaintiff in some way waived this issue by not requesting a further hearing on this matter. The Plaintiff carries many burdens in the sequential process, but once it is determined that Plaintiff cannot perform his former work, the burden shifts to the Commissioner to demonstrate the availability of jobs in the national economy based upon the claimant's residual functional capacity. Therefore, it is the Commissioner's duty to offer competent evidence in this regard, not Plaintiff's. At this point, the Commissioner has not offered proper vocational expert testimony, and remand is necessary so that the vocational expert can offer opinions based on the full record evidence.

**B.     The ALJ failed to weigh the opinions of Dr. Peabody regarding brain damage and limitations on lifting, carrying, sitting, standing and walking and reconcile those opinions with other record evidence.**

The ALJ requested an assessment of Plaintiff's physical condition by an examining medical doctor, which was thereafter provided by Dr. Peabody. Following Dr. Peabody's examination, he issued a report concluding that the claimant had "multiple head injuries with resultant brain damage." Tr. 437. Although the ALJ stated he gave "great weight" to Dr. Peabody's opinions (Tr. 23), he made no finding concerning the presence of brain injury or whether such injury was a severe or non-severe impairment. Further, there is no discussion at

Step Three and thereafter in the sequential process regarding the nature of this brain injury and its impact on Plaintiff's work capacity.

The Commissioner pledges to consider all medical evidence and opinions and the limiting effects of any impairments. 20 C.F.R. §§ 404.1527(c), 404.1545. In a claimant with multiple mental and physical impairments that may limit him to sedentary work, the additional impairment of brain injury could potentially tip the outcome regarding disability. The failure to address the finding of brain damage by an examining expert in any substantive way or the potential limiting impact of brain damage on the claimant's capacity for work obviously require reversal and remand. To the extent the present record does not provide adequate information to create a full and fair record on this issue, the ALJ may wish to obtain additional medical assessments and opinions on the brain damage issue.

Further, the ALJ failed to specifically address Dr. Peabody's limitations on lifting, carrying, sitting, standing and walking and to reconcile that evidence with other conflicting evidence in the record.[4] To the extent that Dr. Peabody's opinions are credited on these issues, the claimant would be limited only to sedentary work and that physical limitation would have to be considered in evaluating the combined effects of Plaintiff's mental and physical impairments, as discussed below. The Court finds that the failure to address Dr. Peabody's opinions on these issues and to make findings regarding Plaintiff's capacity concerning lifting, carrying, sitting, standing and walking were error and require reversal and remand.[5]

---

[4] A non-treating and non-examining expert, Dr. Roper, found Plaintiff could lift 25 lbs. regularly and sit, stand and walk six hours in a ten hour day. Tr. 307.

[5] The Court noted that Dr. Peabody checked a box on the form he completed indicating that the Plaintiff's conditions had not lasted for 12 consecutive months and/or he did not expect

-10-

### C. The ALJ failed to consider the combined effects of Plaintiffs multiple physical and mental impairments.

The Fourth Circuit has previously held that it "is axiomatic that disability may result from a number of impairments which, taken separately, might not be disabling, but whose total effect, taken together, is to render claimant unable to engage in substantial gainful employment." *Walker v. Bowen*, 889 F.2d at 49-50. The task of the Commissioner is, thus, to "consider the combined effect of a claimant's impairments and not fragmentize them." *Id.* at 50.

A review of the ALJ's decision in this matter reveals classic fragmenting of Plaintiff's mental and physical impairments. Tr. 16-23. The various impairments are discussed separately, but no where is there a discussion of the combined effect of Plaintiff's degenerative spine disease, respiratory difficulties, borderline intellectual ability, depression and anxiety. On remand, the ALJ, after determining whether Plaintiff is limited to sedentary work based upon his physical limitations (as discussed above), must then consider the full extent of all of the claimant's mental and physical impairments and describe in the order the combined effect of these multiple conditions. To the extent Dr. Peabody's opinion that the Plaintiff also suffers from brain damage is credited, any limitations from the claimant's brain damage must also be factored into to the analysis of the combined effects of all of the impairments.

In light of the Court's holdings set forth above, it is not necessary to reach the issue of the Appeals Council's failure to address substantively the opinions submitted from Dr. James Hayes and to reconcile those opinions with conflicting opinions credited by the ALJ. *See Meyer v.*

---

them to last that long. Tr. 446. This response appears inconsistent with other findings by Dr. Peabody, including the finding of brain damage and significant limitations on Plaintiff's ability to sit, stand and walk. On remand, the ALJ may want to obtain clarification from Dr. Peabody on this response.

*Astrue*, 662 F.3d 700 (4th Cir. 2011). On remand, the ALJ might want to seek a fuller statement of Dr. Hayes' opinions as Dr. Hayes is allegedly a treating physician (Dkt. No. 20 at 5) and the opinions now offered lack any substantial supporting information. Tr. 448-52.

## Conclusion

Based upon the foregoing, the Court hereby **REVERSES** the decision of the Commissioner and **REMANDS** this matter for further proceedings consistent with this opinion pursuant to Sentence Four of 42 U.S.C. § 405(g).

AND IT IS SO ORDERED.

Richard Mark Gergel
United States District Judge

April 27, 2015
Charleston, South Carolina